All right, our fourth case for this morning is Robert Riffner v. PNC Bank. Mr. Driscoll. May it please the court. My name is John Driscoll. I represent Robert Riffner, his attorney, who was representing NYTEL in this case. There's a very brief time here. I just want to say that there are several uncontested facts in this case, which combined with the undeniable law that would have applied in this case, gave Mr. Riffner every right to proceed with NYTEL's action against PNC for breach of an oral contract. I don't get the oral contract. I'm sorry, Your Honor? I don't get the oral contract. Coy didn't say there was an oral contract. Coy based his testimony on the existence of work orders. With all due respect, Your Honor, I know that Mr. Coy talked about the work orders. He certainly did. He certainly did. But he wasn't the lawyer involved in this case. Yeah, I know. He's the principal. He ought to know what he's doing. He didn't answer the legal question properly. What, he didn't make the contract? He did not make a contract, Your Honor. He didn't say he made a contract. He went on at length in his testimony in that deposition about the calls and contacts made with four different banks. So the lawyer's brief. Let me ask you, first of all, how long did it take NYTEL to finish up its work for the banks? I don't know the exact time. That was never really in question. It was months. It was four different locations. They went back and forth. It was months? Months, yes. Okay. And how much did it cost NYTEL? So how much would NYTEL have needed to cover the expense of these several months of completing the bank work? I don't know what their actual cost was. Their charges to PNC, their billing charge for that work was, I think, around $81,000. Okay, so that's what it wanted. That's what it wanted. Yes. Okay. That was the complaint amount. Now look, $81,000 is not a trivial amount of money. No. Why on earth didn't NYTEL ask for a contract? Just say to the banks, look, you want us to finish the work. We're happy to finish the work. Would you give us a document saying you've hired us to finish this work and you're going to pay us for it? I certainly would, Your Honor, but NYTEL was not represented at that time. Mr. Riftner wasn't representing him. Paul Coy did all of this work for NYTEL. He had a contract. He was a subcontractor with Nextworks, as Your Honor knows. Okay, so he has contracts. Coy has contracts. He knows he's heard of contracts. He's in the middle of a job. So if he's going to be, now he's breaking off from Nextworks, so he's going to be doing this work for the banks, not for Nextworks. He was a subcontractor with Nextworks. Now he's going to be the subcontractor of the banks. Why didn't he ask for a piece of paper? I don't know. He should have. I certainly would have had my representative. He got an email from Nextworks. Well, then where's the contract? I don't see what the contract is. The contract is, as the complaint says, the complaint doesn't allege a written contract. The complaint suggests that there's an agreement. No, I understand, but what is the evidence that he had conversations with the bank and the bank said, yeah, we're hiring you to finish up in four months and give you $81,000? Where's the evidence of that? Well, the contract, as Your Honor knows, under the law, can be implied, and certainly the facts of this place, because NITEL continued to go out to those four locations. But you're saying it's implied through performance, but Judge Hamilton has a question. My question is, while of course an oral contract can be enforced, we've got the lawyer, and this is for Rule 11 purposes, we've got the lawyer telling us in our briefs, PNC's challenge to work orders did not require NITEL to dismiss its complaint because the work orders were irrelevant. That's absolutely correct. Right? Absolutely correct. Okay. So let's look at the district court summary judgment filing. Yes. Plaintiff's response. Paragraph 27. Plaintiff agrees only that NITEL's allegations against MidAmerica and National City are based on purported work orders for each of the branches, the work orders. Paragraph 42 and 43. Plaintiff denies that NITEL admitted it had no contract with MidAmerica for work at the branches in that the work order acted as a contract for the work done. 43. Plaintiff denies that NITEL admitted it had no contract with PNC for work at the branches in that the work order acted as a contract for the work done. Then we've got the complaint itself is saying the work orders are the contracts. So I am mystified as to how this was not frivolous given the explicit reliance on these phony work orders. Well, Your Honor, I'll have to admit I wasn't aware, actually, and I thought I read that complaint, and I wasn't aware that the complaint actually said that the work orders were the contracts. The work orders are attached as the evidence. They're attached to the complaint. I understand the work orders are attached, Your Honor. There's no question that at the start of this case, Mr. Riftner didn't know that PNC was going to come in there and say, yeah, you did all the work. He was assuming at that point in time that there may be some objection or resistance to the fact that NITEL even did the work. The work orders, in fact, were attached to the complaint. But that became a moot point when PNC comes in and says, yeah, you were out here. You did the work. You finished the work. But you have to get paid by next works. But you only came up with this quantum Marowit theory, as far as I could tell, in this court in the reply brief, which is a little late. And the other complication that we haven't mentioned is that then there's next work off in Florida in a bankruptcy proceeding. And he blows the time limit for getting payment. I mean, PNC thought it was billing next work. Next work was going to pay its subcontractors. Next work goes into bankruptcy. And it seems that that's such a straightforward explanation for what went on, that all this business about the work orders and everything else is neither here nor there. May I explain, though? Yeah, sure. The work orders would have no relevance if this case were to go to trial. None. Although, as Judge Hamilton points out, they were relied on in the filings in the district court. My understanding and my reading of the comments, and Judge St. Deve's comments, too, as well, and the motion to compel, when she said, you know, you can't rely on work orders as a contract. Mr. Reffner says, we know that. They are not contracts. They were just there to say we were out there at those locations. There was never a dispute that NITEL was out at those four locations, though. There was never a dispute that the work was done. There was no dispute that they are not contracts. They couldn't have come in to a trial under any circumstance. They would have been totally irrelevant. I find that just a stunning about face, frankly. But that's been a consistent approach of NITEL. It's only been PNC that keeps insisting that the case has to be dismissed because they challenged the work orders. Well, they're just saying we don't have a contractual obligation to pay you, and that's what we're here to figure out. And I obviously will decide. I think when PNC, Your Honor, chose to move this case to the federal court, they had to accept the federal court's decisions as part of the law in this case. And this court knows its decision in Midcoast Aviation made it clear that a subcontractor could go after an owner under a theory of basically unjust enrichment. That's exactly what we have here is the same scenario that existed in Midcoast. They didn't go after their the subcontractor didn't go after the contractor. It went after the owner of the property in Midcoast. And this court acknowledged the theories of oral contract and quasi-contract and everything in that 1990 decision. It was such a good decision that the appellate court, the Second District of Illinois, adopted this court's decision on that thing in 2014. But the problem was PNC thought that or knew that NITEL is a subcontractor of Nextel, of Next whatever it is. Nextworks, yes. Nextworks, yes. Nextworks. So it assumes that Nextworks is the one with whom they deal. Well, but they knew that it was NITEL doing the work. So I understand what you're saying. They had a contract with Nextworks. Nextworks went into bankruptcy. NITEL was going out there doing the work, though. And PNC benefited from NITEL's work. Well, what does PNC know about the bankruptcy, about Nextworks' situation and Nextworks' relationship to COI? I'm not really sure because PNC, as Your Honor knows, was actually a national bank. The point is the bank is dealing with Nextworks. Well, it was the predecessor, national. Well, did NITEL go to the bank and say, look, we're not working for Nextworks anymore because Nextworks is going broke. And we'd like to finish the work for you, you know, which we've been doing. And we'd like to be paid. And this is how much we'd like to be paid. Absolutely. My time is up to answer your question. Yes, of course answer my question. Of course, Your Honor. They did. Of course, they went out there after the e-mail that went to NITEL saying they want only you in shops there. You guys deal directly. They continued and finished the work directly with the branch. And what was their communication with PNC? Mr. Coy talked about having conversations with various people. He also talks a lot about the work orders. He does. He was asked about them. And that's not the correct legal answer. He wasn't. There was no contract on a work order. We all know that. We all know that. Coy didn't know that. He's not a lawyer in this case, Your Honor. He gave a bad answer. He shouldn't have to dismiss that case. If they have grounds under the Midcoast Aviation case to get paid for the work they did. I keep saying, are you saying that your work orders are contracts? To my belief, yes. That was his belief. That's a layperson's belief. And he's the boss. I mean, he's his opponent. Mr. Driscoll, I'd like to follow up on a couple of things since we're actually not debating the contract dispute, which is closed at this point, but the Rule 11 matter. Did Mr. Riffner ever challenge the amount of the sanction in the district court? I didn't see it. Other than I think the comment was in the response that Judge Blakey had actually mentioned that he should not shift fees as a sanction, which is what exactly he did. Other than that. But there was no dispute about reasonableness of hourly rates or time spent. I think there was one comment saying that it was unreasonable for a PNC's attorney to charge $84,000 on a claim that was only free. Yeah, but there's the sunk cost problem. Nobody knows ahead of time how much it's going to cost. And the last point is I believe it is an important part of your position. I just want to confirm that it's correct that you think Mr. Crowley's letters to Mr. Riffner failed to comply with Rule 11C. Absolutely. There was no safe harbor rule at all. Okay. Okay. Thank you very much. Thank you. Mr. Crowley. Good morning, Your Honors. May it please the Court. James Crowley on behalf of PNC Bank. Initially, Your Honors, I would like to apologize to the panel. In reviewing the pleadings and the cases in advance of the hearing today, I realized that Mr. Riffner never filed a response to PNC's sanctions motion. It was only NITEL. And as such, we should have raised and we missed it. I will admit to that to the panel and to the Court. I missed that in filing our response to his, Mr. Riffner's brief. Because as the Court's aware, NITEL, their appeal was dismissed because Are you trying to suggest that Mr. Riffner is not allowed to take advantage of what was asserted on behalf of NITEL by him in the district court? I am saying as it relates, because the only matter before this Court is the sanctions order. I'm saying that Mr. Riffner did not file any objection in the lower court before Judge Blakey. This doesn't sound to me so much like an apology as a bank shot to try to take unfair advantage of the fact that he just filed one response to the sanctions motion. Should he have filed two? Only on behalf of NITEL. Should he have filed two? No, he should have filed it on behalf of himself, his firm, Mr. Coy, and NITEL. Could I ask you, Mr. Crowley, to explain to us how your letters satisfy Rule 11C2? Your Honor, we provided, I provided Mr. Riffner on two separate occasions. One within three or four months after the complaint was filed, with an opportunity to dismiss the complaint based on what we laid out. And to pay you, and to have this happen in much less than 21 days, correct? Your Honor, we did. So let me go back to my question. How does either of your letters satisfy Rule 11C2? As Judge Blakey pointed out, and as we believe the most recent cases have come out, that we allowed Mr. Riffner the opportunity to dismiss. He could have dismissed at any time. No, no, no, no, no. That's not the question. You have not answered my question. Your Honor, we believe. If you want to take advantage of the safe harbor, you've got to do it right. That's the. That's the point. The point. And, in fact, now you, Judge Blakey and you cited the Matrix 4 decision, which all go, and traces this line of dicta from our cases that go back to the Nisenbaum case, right? Right. About substantial compliance. Right. I have a couple of questions about that. First, I'd like to have you reconcile that with the plain language of the rule and the advisory notes. I'd also like you to tell us whether any other circuit agrees. We seem to be all alone on this point. To your second point, Your Honor, we could find no other circuit. In fact, a bunch of circuits have explicitly rejected Nisenbaum and its unexplained substantial compliance rule, correct? Yes, Your Honor. Okay. And whether Nisenbaum is correct or not, can you direct us to any other cases that treat as sufficient under Rule 11C2 a letter that requires a response in less than 21 days and that demands payment in addition to dismissal or withdrawal, which is what both of your letters did? No, Your Honor, I cannot. So why should we treat this as a viable Rule 11 motion for sanctions? Because, Your Honor, we believe that the letter provides Mr. Riffner with adequate notice of the bank's position with respect to his complaint. While it gave him a shorter than 21-day period to dismiss, he could have dismissed the complaint at any time thereafter. Without paying fees, he could have made his motion to dismiss. Are you familiar with the advisory notes on Rule 11C2? I am, Your Honor. Any response to their points about the necessity of serving the motion? I mean, you've been practicing long enough to remember how controversial Rule 11 was in the 1983 amendments and the big fight over the 93 amendments, right? Correct, Your Honor. This was a big deal, and this was a very carefully crafted compromise, and you disregarded the requirements completely. Well, Your Honor, with respect to filing the sanctions motion… No, serving. Serving. Serving the motion, not just a letter, serving the motion that you intend to file to trigger the 21 days. The rule is very clear about that. Your Honor, to that extent… Look, I agree this was a frivolous claim and a frivolous lawsuit. It should have been dismissed, but I'm also looking at a complete failure on your part to comply with the steps procedurally needed to get a financial sanction. Well, Your Honor, to that extent, to address the question, did we follow to the letter of the rule the requirements? I'm not going to sit in front of you and say we did. That would be wrong. And you didn't come close with the demand for payment and the shorter time period. Your Honor, the demand for payment, there's nothing in the rule that I see that doesn't allow the party to say, I want you to dismiss your complaint, and I want you to reimburse us for what we did. You can make that request. The question is whether it complies with the trigger mechanism needed for a Rule 11 monetary sanction. The Rule 11 sanctions, the rule just merely provides that you provide them notice and give them 21 days to dismiss their complaint. No, it requires that you serve a motion. A motion. Right. Do you want me to read it to you? No, Your Honor, you don't have to. Okay. All right, well, I think I've had your answer. Thank you. If there's more that you want to add, I'm happy to hear it. No, there's none, Your Honor. Okay. That being said, we do believe that Judge Blakey's sanctions order was appropriate in this case. The pleadings filed, again, Mr. Riffner did not file a response. The motion filed by Nitell or the response filed by Nitell, in effect, attacks the judgment, but there's been no appeal of the judgment order. So all we're here on is the sanctions motion. And we think, Your Honor, that the ruling by Judge Blakey granting sanctions should stand. And, in fact, Judge Blakey has issued a further contempt order against Mr. Riffner for failure to comply with supplemental proceedings. To collect on the sanctions order? On the sanctions order, $56,000 on November 16th. So everybody's paying a lot of attention to the procedural niceties now? Well, Your Honor, the history of this case is such that Mr. Riffner will do and say what he wants to do. That's clear. Believe me. And this is carried over, passed. I'm not unsympathetic to your situation, to your client's situation, or to Judge Blakey's conclusion that this was a frivolous lawsuit and should have been dropped much earlier. My problem was with Rule 11C. We appreciate that, Your Honor. Thanks. Any further questions? No further questions, so thank you very much. And, Mr. Driscoll, your time expired. If you would like one more minute, I'll give it to you. Your Honor, my time has expired. I didn't want to ask any questions. Yeah, I have a question. What do you think of Rule 11C or Rule 11? Your Honor, I think it's an important part of this court procedure. I also think that in the state court, the same sanction under Rule 137 is very important as well. Pardon? I think 137 in the state court is just as important to protect that process. Why is Rule 11 important? I'm sorry? Why is Rule 11 important? I think it's important to prevent, especially attorneys but parties, from wasting the court's time and conducting frivolous actions in court. Well, that, of course, is the argument about Riffner. I understand. He imposed costs on the opponent and should pay them. Your Honor, if I may, it's clear what your Honor's think about this case, about the merits of the case. I'm not here to say I'm not Mr. Riffner. I do trial work. I do it differently than Mr. Riffner. But I have to honestly say, from my own perspective, the Midcoast case, I believe, entitles in these facts, NITEL, to a cause of action. There was all this confusion about the work orders and Mr. Coy's, he should have been prepared better, at least, if there was going to be legal questions. I understand that. But I believe NITEL actually has a cause of action for the unpaid work, based on a Midcoast Aviation case. But that's a separate issue. I mean, assuming NITEL didn't have a case. But I'm just saying, I don't believe this was a frivolous, with all due respect to the court's time. Yes, I understand that. But if it was frivolous, why wasn't it a $84,000 sanction request? Why wouldn't that be appropriate? Well, Rule 11- File a frivolous suit and you impose expenses on the defense. I think that Rule 11 says that the sanctions, if they're deserved, should be to deter future conduct. Not a fee shifting thing, which was done here. $84,000 is a huge sanction. The Matrix case that they relied on was a $2,500 sanction. That was too much. And it was the same thing. It was the same thing, because in the Matrix case, it was a subsidiary. But the measure of sanctions is the cost to the person requesting it, right? So if the bank had to pay $84,000 to be represented in this litigation, and it was frivolous litigation, it's at $84,000 through no fault of its, but through incompetence of its opponent. Why isn't that appropriate? I might just say, the court knows the case. The challenge to those work orders, if that's in fact the problem here. If the challenge didn't come until a year and a half after the case had started, Mr. Rifter couldn't have possibly thought that there was a challenge to the work orders that his client gave him. And I don't understand them coming with affidavits saying the work orders weren't signed. There were work orders. There clearly were work orders here. Why didn't they produce the correct ones? They come in with affidavits saying, those aren't our signatures. Did the people at NITEL walk in with a toolbox, walk behind the bank desk and say, I'm here to do your cable work? I think they would be here in a criminal case if they tried that. We all know they were given the authority to be there. Even Judge Blakey said, we know they had the authority. That's all the work order did. You mix up the sanctions issue with the merits issue. I guess I do. If this was frivolous litigation by NITEL and it imposed real substantial costs on the bank to defend against this frivolous litigation, then sanctions would be appropriate, wouldn't they? Only if they complied with Rule 11. Only if they complied with Rule 11. With what? Timeliness or what? Well, the timeliness of the motion, clearly the timeliness of the motion, which I brought out, was late. And the Rule 11 letters were clearly improper and did not function as a rule. They had two letters, one which wanted a $9,100 fine, $9,150, and the other one $24,000 fine. And the question of the work orders didn't come until the second Rule 11 letter when they wanted $24,000 to dismiss the case. And this is before Mr. Rifter could even, I just want to make one other point. Mr. Rifter simply wanted one more bit of discovery, which would have gone along with the Midcoast case. He requested the court to say, we want P&C to say, to determine, did you pay for this work? That would have given the last prong to proceed on the Midcoast aviation case, because if they hadn't paid for the work and NITEL did the work. Yeah, I know, that's not a sanctions issue. But, but, but your Honor, it is. Forget it. I'm asking you about sanctions. Well, the sanctions are appropriate if there, if there were, if this was frivolous litigation, if, so forget about your arguments that it wasn't frivolous. But if it was frivolous, are these appropriate sanctions, or is there something wrong with the sanctions? Or as, you know, Judge Hamilton was suggesting. I think a sanction is very serious. And it has to be, you have to comply with the rules. If you're going to say somebody else didn't comply with the rules and you are entitled to a sanction, you yourself must comply with the rules. I think that P&C had to give a safe harbor notice and comply with the committee minutes and the cases that have come up since that time. They didn't. They wanted self-imposed sanctions on two letters. And they didn't even raise the issue on the work orders until well into 2013. Yeah, if that delay doesn't really help you, though, if they were forged work orders from the plaintiff, right? There was no proof that NITEL forged them. No proof, no. I mean, somebody signed work orders for NITEL to go back there. Now, whether it was somebody at P&C Bank that says, oh, Sally Smith is here, we'll sign it. They allowed NITEL into those bank branches. So somebody gave them, somebody from P&C signed work orders allowing them back in their banks. There's no question about that. Even Judge Blake, he said that. He said there's no question they have the authority to do this work. I don't know anything about these signatures. I mean, back when I was an IRS agent, if somebody said that to me, I would say, you know what I want? Forget these affidavits. Show me, if those are frauds, show me the ones they did have. They never did that. Why didn't they produce, oh, here's the real work orders? They didn't do that. It's kind of strange. But the point is that if that had anything to do with a fraudulent case, it wasn't until way late in the game that they even brought it to the Supreme Court. So you're essentially saying the sanctions order is too high because it over-deters. I think I'll take that as your point. Absolutely, Your Honor. Okay, thank you very much. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.